```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WARREN O'CONNELL, ES-9984         )
                Plaintiff,        )
                                  )
            v.                    )   Civil Action No. 03-706
                                  )   Judge David S. Cercone
DALE WILLIAMS, Unit Manager of D  )   Magistrate Judge Lenihan
Unit; JOHN WILLIAMS, Captain of   )
the Guards; JOSEPH MAZURKIEWICZ,  )
Deputy Warden; JOHN BARRY JOHNSON,)
Warden at S.C.I. Pine Grove; and  )
JEFFREY A. BEARD, Secretary of    )
Corrections,                      )
                Defendants.       )
```

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 66) be granted. It is further recommended that Plaintiff's pending motions for miscellaneous relief and discovery (doc. nos. 57, 59, 62 and 76) be denied.

### II. REPORT

Plaintiff, Warren O'Connell, an inmate previously incarcerated at the State Correctional Institution at Pine Grove, Pennsylvania (SCI-Pine Grove), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. The only remaining claim in this action is Plaintiff's Eighth Amendment failure to protect claim against Defendants Dale Williams, John Williams, and Joseph Mazurkiewicz.

## A. Standard of Review

All remaining Defendants have filed a motion for summary judgment. Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

### B. <u>Undisputed Material Facts</u>

Plaintiff Warren O'Connell was an inmate confined in the State Correctional Institution at Pine Grove beginning in 2001. O'Connell Depo. p.12 (hereinafter "Dep."). At some point prior to January of 2003, O'Connell was assigned to a double cell with inmate Richard Greene. Dep. pp.17-20. Plaintiff admitted he had no problems with Greene as a cellmate until January of 2003, when he learned from other inmates that Greene was a convicted child molester. Dep. pp.17-20. When O'Connell confronted Greene, Greene told him that he had been accused of molesting his two year old daughter. Dep. pp. 17-20. Plaintiff refused to be housed with a child molester and asked the manager of the housing unit, Dale Williams, for a cell change. Dep. pp. 17-20.

O'Connell worked as a janitor in the housing unit and saw Dale Williams on a daily basis. Dep. pp. 16-17. He routinely asked Williams about the status of his request for a cell change and told Williams that he and Greene were not getting along. Dep. pp. 28-29, 32, 44. O'Connell also sent written requests to Williams on January 26, 2003 and February 14, 2003 requesting to speak with him about a cell change. Ex. A, doc. no. 66. Williams never responded in writing to O'Connell's requests; instead, he told Plaintiff he would take care of it when a cell became

- 3 -

available.  Dep. pp. 29-30, 32.  Plaintiff then asked Dale Williams whether he was waiting for a fight to occur.  Dep. p.29.

Plaintiff also requested a cell change from Captain John Williams on several occasions and submitted a written request to Captain Williams on February 18, 2003.  Ex. B, doc. no. 66. Captain Williams came to the laundry room on D Unit where Plaintiff was working to talk to him about the cell change request.  Plaintiff told him that tension was building in the cell and that Greene had made smart comments towards him.  Captain Williams told Plaintiff that Dale Williams, as Unit Manager, was in charge of cell assignments and that he was taking care of it. Dep. pp.25-27.

On February 24, 2003, Plaintiff sent a written request to Deputy Superintendent Joseph Mazurkiewicz requesting to speak with him about his cell conditions.  Ex. C, doc. no. 66.  Plaintiff spoke to Deputy Mazurkiewicz a few days after February 25th, 2004 and told him about the tension between himself and Greene and asked the Deputy whether he was waiting for a fight to occur. Dep. pp. 48, 53-57.

On March 5, 2006, Plaintiff submitted another written request to Dale Williams requesting to speak with him about a cell change. On that date, Plaintiff told Williams that Greene was knocking his things off the desk and telling him he could not keep them on the

desk but had to put them in his locker.  Williams told Plaintiff he was going to take care of him.  Dep. p. 32.

On March 6, 2003, Plaintiff's cell was searched and contraband in the form of a stockpile of sugar, garlic powder, and other spices were found in Greene's locker.  When Greene returned to the cell he became angry when he found out his stockpile of spices had been confiscated.  Dep. pp. 32-34.  Afterward, Plaintiff and Greene went to lunch separately and both returned to their cell later that day for the count.  Dep. pp. 32-38.  Plaintiff climbed into his bunk and listened to his radio while Greene sat on the table in their cell.  Plaintiff asked Greene to move off the table because static was on his radio.  Greene told him it was not his problem.  When Plaintiff moved his radio, the attached electrical cord accidentally knocked an empty drinking cup from Greene's locker.  Greene began yelling at Plaintiff who jumped down from his bunk and started yelling back.  Greene then punched Plaintiff and they began fighting.  Dep. pp. 32-38.  Plaintiff was punched, kicked, and bitten by Greene before he was able to escape when the officers unlocked his cell.  Dep. pp. 37-38.  Plaintiff was treated by a nurse who took photographs of his injuries and noted that he had superficial abrasions on his right eye, chin, head, upper back, and left arm.  Ex D, doc. no. 66.  Subsequently, Plaintiff received a misconduct for fighting Greene

and was sanctioned to sixty (60) days; the hearing examiner determined that it was a mutual altercation.  Ex. E, doc. no. 66.

### C. Liability under Section 1983

Plaintiff's complaint seeks recovery under 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements:  1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff's remaining claim asserts liability against Defendants under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the

safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). The Eighth Amendment further requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners.  Farmer, 511 U.S. at 834 ("[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).

     Every Eighth Amendment claim embodies both an objective and a subjective component.  In the context of a "failure to protect" claim, a plaintiff must demonstrate that:  1) he is incarcerated under conditions posing a substantial risk of serious harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834.  The first criterion requires a plaintiff to demonstrate that he suffered a deprivation that is "objectively sufficiently serious."  *Id*.  In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, "deliberate indifference," requires that a plaintiff show that the defendant prison official had a sufficiently culpable state of mind.  <u>Farmer</u>, 511 U.S. at 828. The Supreme Court explained the deliberate indifference standard in <u>Farmer</u> as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.

<u>Farmer</u>, 511 U.S. at 837 (emphasis added).

Plaintiff's own admissions are insufficient to demonstrate a violation of the Eighth Amendment based on the Defendants' alleged failure to protect him from injury by inmate Greene. Specifically, Plaintiff has not demonstrated that Defendants acted with deliberate indifference to his safety when they failed to approve Plaintiff's cell change request.

To show deliberate indifference, the prison official need not believe or intend that the inmate will actually be harmed; rather, he is liable if he consciously ignores a <u>known substantial risk</u> to an inmate's safety.  <u>Farmer</u>, 511 U.S. at 842.  Here, there is no allegation that any Defendant was aware, or should have been aware, of any threat to Plaintiff's safety.  Specifically, Plaintiff makes no allegation that Greene was a known security risk or that he and Greene had had any altercation in the past.

In fact, Plaintiff has stated that he requested the cell change because he did not want to room with a child molester.  Moreover, in none of his written requests did Plaintiff notify anyone that Greene had threatened him.  Rather, he said things were tense and that they were squabbling about their belongings and such.  Greene attacked Plaintiff only after he was upset about the confiscation of his spice cache and he and Plaintiff began arguing about the radio.  Nothing in the record suggests that Defendants should have been aware that Greene posed a significant risk.

    A different situation was presented in Davidson v. Cannon, 474 U.S. 344 (1986), where the inmate had received a threat from another inmate and then communicated the threat to prison officials.  The defendant officials deemed the threat non-serious and did not take any action; two days later the plaintiff was attacked and injured by the cited inmate.  The District Court determined that the inmate had failed to establish an Eighth Amendment claim because there had been no deliberate indifference and the incident related to a single attack.  Id., 474 U.S. at 346.  However, the inmate prevailed under the Due Process Clause pursuant to his claim that prison officials negligently had failed to protect him from attack.  Id.  Ultimately, the United States Supreme Court reversed this determination and held that, even though the officials' lack of due care had led to the plaintiff's

injuries, such "negligence" could not be the basis of a constitutional violation. *Id*. at 347-348.

The Supreme Court applied the same reasoning to an Eighth Amendment excessive force claim in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.

*Id*. at 319.

The Supreme Court repeatedly has emphasized that the deliberate indifference standard is a stringent standard of fault, requiring proof that a defendant disregarded a <u>known or obvious consequence</u> of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997) (emphasis added). While the harm actually suffered by Plaintiff gives this Court the benefit of hindsight, it does not reasonably support an inference that Defendants disregarded a substantial risk to his safety. Put simply, Defendants' actions do not show any conscious, culpable refusal to prevent a <u>known</u> risk of harm. *See* <u>Caldwell v. District of Columbia</u>, 901 F.Supp. 7, 9 (D.D.C. 1995) (correction officers' alleged negligence in following prison procedures in the opening and closing of cell doors did not rise to the level of deliberate indifference), *appeal dismissed*, 1996 WL 587652 (D.C. Cir. Sep.

- 10 -

16, 1996); <u>Doyle v. District of Columbia</u>, 1997 WL 590799, *3 (D.D.C. 1997) (plaintiff's general allegations that defendants showed deliberate indifference to prison safety failed to state any Eighth Amendment claim).  Consequently, the Motion for Summary Judgment (doc. no. 66) should be granted.

  Plaintiff also has several pending motions for miscellaneous relief and for discovery (doc. nos 57, 59, 62, & 76).  Defendants have responded to these motions and supplied Plaintiff with all relevant information.  Consequently, these pending motions should be denied.

### III. <u>CONCLUSION</u>

  It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 66) be granted.  It is further recommended that Plaintiff's pending motions for miscellaneous relief and discovery (doc. nos. 57, 59, 62 and 76) be denied.

  In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

               s/Lisa Pupo Lenihan
               LISA PUPO LENIHAN

```
                                        U.S. Magistrate Judge

Date:      March 3, 2006



cc:   Honorable David S. Cercone
      United States District Judge

      Warren O'Connell, ES-9984
      SCI Forest
      P.O. Box 945
      Marienville, PA 16239
      CERTIFIED MAIL
      RETURN RECEIPT REQUESTED

      Mary Lynch Friedline
      Deputy Attorney General
      Office of Attorney General
      6th Floor, Manor Complex
      564 Forbes Avenue
      Pittsburgh, PA 15219
```